

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   701 University Avenue, Suite 106
3  Sacramento, CA 95825
   Telephone: (916) 447-4900
4  brad@benbrooklawgroup.com
   steve@benbrooklawgroup.com
5
   Attorneys for Plaintiffs
6

7

8

9

10

11                    **UNITED STATES DISTRICT COURT**

12                **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  CHRISTOPHER J. HOFFMAN; CHAD          Case No.: 3:24-cv-664-CAB-MMP
    ORRIN; JENNIFER SENSIBA; and
15  FIREARMS POLICY COALITION,            **PLAINTIFFS' CONSOLIDATED**
    INC.,                                 **BRIEF IN OPPOSITION TO**
16                                        **DEFENDANT'S MOTION FOR**
                     Plaintiffs,          **SUMMARY JUDGMENT AND**
17                                        **REPLY IN SUPPORT OF THEIR**
            v.                            **MOTION FOR SUMMARY**
18                                        **JUDGMENT**
    ROB BONTA, in his official capacity as
19  Attorney General of California,

20
                                          Date: N/A
21                   Defendant.           Time: N/A
                                          Courtroom: 15A (15th Floor)
22                                        Judge: Hon. Cathy Ann Bencivengo

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

OPPOSITION AND REPLY ARGUMENT .......................................................... 2

A.    The Non-Resident Carry Ban Violates The Second Amendment ................. 2

    1.    Plaintiffs' Proposed Course of Conduct is Protected by the Second Amendment's Plain Text ................................................................. 2

    2.    The Non-Resident Carry Ban Is Facially Unconstitutional ................ 6

    3.    The Non-Resident Carry Ban Is Inconsistent With The Nation's Historical Tradition of Firearm Regulation .......................................... 8

B.    California's Non-Resident Carry Ban Violates The Privileges And Immunities Clause ........................................................................................ 14

    1.    The Right To Publicly Carry Firearms For Self-Defense Falls Within The Privileges and Immunities Clause's Purview ............................. 14

    2.    The Non-Resident Carry Ban Is Not Adequately Tailored To The State's Public Safety Interest ............................................................. 16

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023) ....................................................................... 8

*Baldwin v. Fish & Game Comm'n of Montana*,
  436 U.S. 371 (1978) ................................................................................... 15

*Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*,
  745 F. Supp. 3d 1037 (C.D. Cal. 2024) ................................................. passim

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ..................................................................................... 6

*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015) ..................................................................................... 7

*Corfield v. Coryell*,
  6 F. Cas. 546 (C.C.E.D. Pa. 1823) (Washington, J.) (No. 3,230) ............ 14

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
  522 F.3d 925 (9th Cir. 2008) ...................................................................... 14

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................................. 1, 4, 9

*Doe v. Bolton*,
  410 U.S. 179 (1973) ............................................................................ 15, 16

*Doe v. City of Albuquerque*,
  667 F.3d 1111 (10th Cir. 2012) .................................................................... 8

*Duncan v. Bonta*,
  No. 23-55805, 2025 WL 867583 (9th Cir. Mar. 20, 2025) .......................... 9

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ........................................................................ 8

*Hicklin v. Orbeck*,
  437 U.S. 518 (1978) ............................................................................ 15, 16

*Hoye v. City of Oakland*,
  653 F.3d 835 (9th Cir. 2011) ........................................................................ 7

*Isaacson v. Horne*,
  716 F.3d 1213 (9th Cir. 2013) ............................................................. 6, 7, 8

*Lee v. Minner*,
  458 F.3d 194 (3d Cir. 2006) ....................................................................... 16

*Marilley v. Bonham*,
  844 F.3d 841 (9th Cir. 2016) ................................................................ 14, 16

*McDonald v. Chicago*,
  561 U.S. 742 (2010) ................................................................................... 15

*Nelson v. Geringer*,
  295 F.3d 1082 (10th Cir. 2002) .................................................................. 16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  597 U.S. 1 (2022) ................................................................................. passim

*Range v. Att'y Gen. United States*,
    124 F.4th 218 (3d Cir. 2024)......................................................................5

*Rhode v. Bonta*,
    713 F. Supp. 3d 865 (S.D. Cal. 2024) .....................................................11

*Supreme Ct. of New Hampshire v. Piper*,
    470 U.S. 274 (1985) ............................................................................15, 16

*Supreme Ct. of Virginia v. Friedman*,
    487 U.S. 59 (1988) ..............................................................................14, 17

*Toomer v. Witsell*,
    334 U.S. 385 (1948) ...................................................................................15

*United Bldg. and Constr. Trades Council v. Camden*,
    465 U.S. 208 (1984) ...................................................................................14

*United States v. Gore*,
    118 F.4th 808 (6th Cir. 2024).....................................................................5

*United States v. Harrison*,
    654 F. Supp. 3d 1191 (W.D. Okla. 2023) ...............................................11

*United States v. Perez-Garcia*,
    96 F.4th 1166 (9th Cir. 2024).....................................................................5

*United States v. Rahimi*,
    602 U.S. 680 (2024) ...........................................................................passim

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) .....................................................................................4

*Wolford v. Lopez*,
    116 F.4th 959 (9th Cir. 2024), *petition for cert. docketed* No. 24-1046 (U.S. April 1, 2025) ..................................................................................................9, 13

*Worth v. Jacobson*,
    108 F.4th 677 (8th Cir. 2024).....................................................................5

**Statutes**

Brooklyn, N.Y., Ordinance to Regulate the Carrying of Pistols (1880), §§ 1, 5.......12

Cal. Penal Code § 25400 ....................................................................................2

Cal. Penal Code § 26150 ....................................................................................2

Cal. Penal Code § 26155 ....................................................................................2

Carrying of Pistols, N.Y.C., Ordinances ch. 8, art. 27, §§ 264, 266 (1881).............12

The General Ordinances of the City of Milwaukee (1896), ch. 20, § 25 .................12

**Other Authorities**

Mark W. Smith,
    *Attention Originalists: The Second Amendment was adopted in 1791, not 1868*, Harv. J. L. Pub. Pol'y Per Curiam (Dec. 7, 2022)............................................10

## INTRODUCTION

California provides no avenue for non-residents to secure a license to carry a concealed weapon, which is necessary to carry a firearm in public for self-defense. This ban does not survive the test prescribed by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).

*Bruen* leaves no doubt that Plaintiffs' proposed course of conduct—carrying firearms in public for self-defense—is covered by the text of the Second Amendment. 597 U.S. at 32–33. California law requires a license to exercise the right to public carry, but non-residents such as Plaintiffs are prohibited from applying. Instead of conceding this obvious point, the State argues that, until it can confirm that an applicant is "law-abiding" and "responsible," they are not within "the people" that the Second Amendment protects. The Supreme Court has already settled this issue: *Heller* teaches that "the people" is a term that "unambiguously refers to all members of the political community, not an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008). *Bruen* reiterated that the Second Amendment's guarantees extend to "'all Americans.'" 597 U.S. at 70 (quoting *Heller*). And even *Rahimi* rejected the idea that individuals are not among "the people" simply because the government claims that they are not "responsible." *United States v. Rahimi*, 602 U.S. 680, 701 (2024). In fact, the Supreme Court's determination in *Rahimi* conclusively rejects California's argument.

Turning to *Bruen*'s historical test, California has failed to meet its burden to show that the non-resident carry ban is "consistent with the principles that underpin the Nation's regulatory tradition." *Rahimi*, 602 U.S. at 692. There is no well-established and representative historical tradition of prohibiting law-abiding citizens who cross state lines from bearing arms. The ramshackle collection of historical regulations California cobbles together are too few in number, too dissimilar in purpose and effect, and too late in time to satisfy the State's burden of proof. If anything, the historical record illustrates a broad consensus in favor of permitting

public carry—and does not support the State's across-the-board prohibition on non-residents' ability to exercise their Second Amendment protected rights.

In short, California's non-resident carry ban is unconstitutional. The Central District has already held as much. *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024). Perhaps the most telling feature of the State's summary judgment brief is that it fails to cite—even once—the district court's preliminary injunction decision in *California Rifle & Pistol Association* or the resulting order establishing a procedure for non-residents to apply for carry licenses. That decision and order provide a roadmap for the Court's work here.

California's constitutional problems don't end there. The non-resident carry ban also violates the Privileges and Immunities Clause because it favors California residents and discriminates against non-residents in the exercise of a fundamental right. The State's effort to dodge Privileges-and-Immunities review by claiming the Clause only protects economic activity ignores Supreme Court cases stretching back over fifty years. And the fact that the ban is not adequately tailored to the State's asserted public safety interests is borne out by the terms of the injunction it negotiated in *California Rifle & Pistol Association*.

The Court should enter summary judgment in Plaintiffs' favor.

## OPPOSITION AND REPLY ARGUMENT

### A.    The Non-Resident Carry Ban Violates The Second Amendment.

#### 1.    Plaintiffs' Proposed Course of Conduct is Protected by the Second Amendment's Plain Text.

*Bruen* has already established that Plaintiffs' proposed course of conduct—carrying firearms in public for self-defense—is plainly covered by the text of the Second Amendment. 597 U.S. at 32–33. Under California law, the only way to do so is to secure a license to carry a concealed weapon. *See* Cal. Penal Code §§ 25400, 26150, 26155. Plaintiffs therefore seek to secure their right to apply for a California

CCW license on par with California residents who may apply under the State's general licensing regime. Put simply, California's non-resident carry ban prevents Plaintiffs from engaging in conduct protected by the Second Amendment's plain text: They cannot "bear" arms in public while visiting California. *See Cal. Rifle & Pistol Ass'n, Inc*, 745 F. Supp. 3d at 1064 (recognizing that under the "the text of the Second Amendment," "non-residents have the right, like California residents, to apply to lawfully carry firearms for self-defense while in public").

Rather than concede this straightforward conclusion, the State asserts that the non-resident carry ban "does not implicate the Second Amendment" because, it claims, non-residents are not necessarily "law-abiding and responsible." Br. 7. Until California confirms that this is so, the argument goes, an "individual presumptively does not fall within 'the people' to whom the Second Amendment refers." Br. 7–8.

This argument makes little sense on its face: Under the State's logic, no permitting regime—or any firearm regulation, for that matter—would implicate the Second Amendment's plain text until the government makes a determination that an individual is "law-abiding and responsible." That cannot be so.

The State's logic depends on an assumption that individuals are *not* law-abiding, which runs counter to *Bruen*'s holding that the Second Amendment "guarantees a general right to public carry." 597 U.S. at 33; *see id.* at 31 (referring to "the general right to publicly carry arms for self-defense"). When proceeding to the historical analysis, *Bruen* highlighted the fact that "[b]ecause [shall-issue] licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id.* at 28 n.9. In doing so, the Court pointed out that "shall-issue regimes" "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'" by requiring applicants to undergo a background check and pass firearms safety training requirements. *Id.*; *see also id.* at 80 (Kavanaugh, J., joined by Roberts, C.J.,

concurring) (observing that "shall-issue regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements").

It is little surprise, then, that the State's argument defies the Supreme Court's precedents, which confirm that the Second Amendment's reference to "the people" cannot be read so narrowly. *Heller* states that "the people" is a term that "unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. at 580 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990), which explained that "the people" referenced in the First, Second, Fourth, Ninth, and Tenth Amendments "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"). *Bruen* likewise recognized that the Second Amendment "guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." 597 U.S. at 70 (quoting *Heller*, 554 U.S. at 581).

Most recently, in *United States v. Rahimi*, when considering the constitutionality of the federal prohibition on firearm possession for individuals subject to a domestic violence restraining order, the Court rejected the federal government's argument "that Rahimi may be disarmed simply because he is not 'responsible.'" 602 U.S. at 701; *see also id.* at 752 (Thomas, J., dissenting) (remarking that it was "undisputed that the Second Amendment applies to Rahimi," quoting *Heller*, and explaining that "[s]ince Rahimi is a member of the political community, he falls within the Second Amendment's guarantee"); *id.* at 708 (Gorsuch, J., concurring) ("In this case, no one questions that the law Mr. Rahimi challenges addresses individual conduct covered by the text of the Second Amendment."). The Court's mode of analysis conclusively refutes the State's argument that the Second Amendment's plain text does not come into play here: Despite the fact that Rahimi

was demonstrably dangerous, the Court proceeded directly to the historical analysis without addressing whether Rahimi was part of "the people." *See id.* at 686–88 (reviewing Rahimi's record of firearm-related misconduct, including five separate incidents where he discharged a firearm during disputes); *id.* at 693–700 (conducting the historical analysis). The Court then swiftly dispensed of the claim that Rahimi was not "responsible" by stating that the government's assertion did not "derive from our case law." *Id.* at 701.

So while the Supreme Court has already done all of the necessary work to reject the State's argument, it is worth noting that several circuits—including the Ninth Circuit—have heeded *Heller*'s clear command and refused to narrowly confine the Second Amendment's reference to "the people." *See, e.g.*, *United States v. Perez-Garcia*, 96 F.4th 1166, 1178–80 (9th Cir. 2024) (holding that pretrial releasees who have been charged with but not convicted of a crime "fall within the plain meaning of 'the people'" because "they remain members of the national community"); *Range v. Att'y Gen. United States*, 124 F.4th 218, 226–28 (3d Cir. 2024) (rejecting the government's argument that "felons are not among 'the people' protected by the Second Amendment" because they are not "law-abiding, responsible citizens"); *United States v. Gore*, 118 F.4th 808, 813 (6th Cir. 2024) (rejecting the government's argument that individuals under indictment were not among "the people" protected by the Second Amendment's plain text "because they are not 'law-abiding, responsible citizens'"). As the Eighth Circuit succinctly put it, under the "'plain text' analysis, a claim that a group is 'irresponsible' or 'dangerous' does not remove them from the definition of the people." *Worth v. Jacobson*, 108 F.4th 677, 692 (8th Cir. 2024).[1]

---

[1] Even if the State were not flat wrong as a jurisprudential matter, its argument skirts the scope of what Plaintiffs seek: They are simply asking for the right to apply for a permit, which means that California would have the opportunity to determine whether they are "law-abiding" and "responsible," just as the State does with in-state applicants.

In short, Plaintiffs' proposed course of conduct is covered by the Second Amendment's plain text, so it is therefore "presumptively protect[ed]" by the Constitution. *Bruen*, 597 U.S. at 24.

### 2.    The Non-Resident Carry Ban Is Facially Unconstitutional.

That Plaintiffs have asserted a facial challenge to California's non-resident carry ban does not change the analysis. *See* Br. 6, 8–9. The State claims that Plaintiffs face an insurmountable hurdle because there could be out-of-state applicants "convicted of multiple violent felonies" who "could properly be barred by California from obtaining a carry permit." Br. 9. This argument fails on multiple fronts. First, the hypothetical presumes that an out-of-state felon is not part of "the people" protected by the Second Amendment. This is wrong for the reasons explained above.

Even so, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). "Instead, the distinction matters primarily as to the remedy appropriate if a constitutional violation is found." *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013). This Court can plainly grant relief to remedy the unconstitutional application of the non-resident carry ban to the Plaintiffs and others who, but for their out-of-state residence, would otherwise be eligible for a license.

Turning to the merits, the State's imagined scenario also fails on its face. To be sure, when assessing a facial challenge, courts must "consider the circumstances in which [a statute is] most likely to be constitutional" instead of "focus[ing] on hypothetical scenarios where [the statute] might raise constitutional concerns." *Rahimi*, 602 U.S. at 701. But there is no situation where the non-resident carry ban passes constitutional muster: It is facially unconstitutional to deny someone a right to publicly carry a firearm for self-defense *because* they reside in another state. California has not posited any circumstance in which that would be constitutional, and the only element of the licensing scheme Plaintiffs challenge is its limitation to

residents. So while a non-resident felon could constitutionally be denied for *being a felon*, they cannot be deprived of their Second Amendment protected rights for *being from out of state*. Put differently, even a facial analysis properly focuses on "the group for whom the law is a restriction, not the group for whom the law is irrelevant." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). And here, the group for whom the law is a restriction are those who would be eligible for a license but for their out-of-state residence. It is irrelevant for violent felons and others who would otherwise be ineligible, as shown by the fact that even if the residency restriction is facially invalidated such individuals would still be ineligible for a license.

Plaintiff Hoffman's experience illustrates the point. Hoffman is a California native who held a concealed carry license issued by the San Diego County Sheriff's Office from 1990 until he moved out of state in 2012. ECF 17-2, Hoffman Decl., ¶ 4. Hoffman frequently visits San Diego to spend time with family and friends. *Id.* In 2023, he applied to the San Diego County Sheriff's Department for a concealed carry license and, after going through the interview process, was denied because he is not a California resident. *Id.*, ¶ 5. As to the non-resident carry ban, Hoffman and the State's hypothetical serial felon stand on the same footing: They are deprived of any opportunity to apply for the concealed carry license that is necessary to exercise their Second Amendment protected right to publicly carry a firearm for self-defense. The injury lies in the State's denial of an application on the basis of their residency—and does not stem from a denial due to disqualifying criminal activity. In other words, there is a "universal correlation" among all people affected by California's residency requirement, so a facial attack is appropriate. *Isaacson*, 716 F.3d at 1231.

This case does not involve "a subset of the statute's applications, or the application of the statute to a specific factual circumstance" where the Court could "'separate valid from invalid subrules or applications.'" *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (citation omitted); *see also Isaacson*, 716 F.3d at 1231 (an as-applied challenge is proper when the "claimed statutory defect applies to a sub-

category of the people affected by the law"). Rather, "the claimed constitutional violation inheres in the terms of the statute, not its application." *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011). Under these circumstances, because "there is a one hundred percent correlation between those whom the statute affects and its constitutional invalidity as applied to them," it is appropriate to "declar[e] the statute entirely invalid." *Isaacson*, 716 F.3d at 1230; *see also, e.g.*, *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) ("[W]here a statute fails the relevant constitutional test . . ., it can no longer be constitutionally applied to anyone—and thus there is 'no set of circumstances' in which the statute would be valid." (citation omitted)).

In sum, the non-resident carry ban should be invalidated in its entirety because it is facially unconstitutional.

### 3. The Non-Resident Carry Ban Is Inconsistent With The Nation's Historical Tradition of Firearm Regulation.

Under *Bruen*, the burden now shifts to California. It must show that the non-resident carry ban is "consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 34. "[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *Rahimi*, 602 U.S. at 691 (quoting *Bruen*, 597 U.S. at 24). And it must do so by offering persuasive legal history. *See Bruen*, 597 U.S. at 25; *id.* at 25 n.6 (courts "decide a case based on the historical record compiled by the parties"). The "central" component of this careful analogical inquiry looks principally at "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29. To carry its burden, California must "identify a well-established and representative" tradition of analogous regulation. *Id.* at 30 (citation omitted); *see also Baird v. Bonta*, 81 F.4th 1036, 1040–41 (9th Cir. 2023) (the government must show that the modern

"regulation is identical or closely analogous" to historical analogues that were "broadly in effect").

The analogical analysis is focused on determining "whether the challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition." *Rahimi*, 602 U.S. at 692; *accord Wolford v. Lopez*, 116 F.4th 959, 977–79 (9th Cir. 2024), *petition for cert. docketed* No. 24-1046 (U.S. April 1, 2025). Here, Defendants have not met their burden because no historical tradition of remotely analogous regulation exists: There is no historical principle underlying the Second Amendment of prohibiting law-abiding citizens who cross state lines from bearing arms.

In their opening brief, Plaintiffs summarized the three key methodological considerations guiding the Court's analysis in *Bruen*'s analogical inquiry. ECF 17-1, 7–8. While there is no need to restate those points here, Plaintiffs will respond to the State's effort to tilt the playing field by insisting that the Court should focus on Reconstruction-era laws here. Br. 10–11 (discussing the "relevant period"). Of course they do: There is no Founding-era law to speak of that supports California's case, and what little "Reconstruction-era" regulations the State musters long post-date the 14th Amendment's adoption.

In all events, the Court must bear in mind that, "[w]hen considering historical sources, 'not all history is created equal.'" *Duncan v. Bonta*, No. 23-55805, 2025 WL 867583, at *11 (9th Cir. Mar. 20, 2025) (quoting *Bruen*, 597 U.S. at 34). As the Ninth Circuit recently explained:

> Regulations enacted close to the time of ratification are the most relevant, because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." Historical evidence that long predates, or long postdates, the date of ratification is less illuminating, particularly if it contradicts the text of the Second Amendment or evidence from the time of the ratification.

*Id.* (quoting *Bruen*, 597 U.S. at 34, in turn quoting *Heller*, 554 U.S. at 634–35). In short, the key starting point when assessing historical analogues is the Founding Era,

1    centering on the date of the Second Amendment's ratification in 1791. *See* Mark W.

2    Smith, *Attention Originalists: The Second Amendment was adopted in 1791, not 1868*,

3    HARV. J. L. PUB. POL'Y PER CURIAM (Dec. 7, 2022), https://bit.ly/41OFQND.

4        Turning to *Bruen*'s historical test, California has failed to meet its burden to

5    show that the non-resident carry ban is "consistent with the principles that underpin

6    the Nation's regulatory tradition." *Rahimi*, 602 U.S. at 692. Notably absent from the

7    State's brief is any reference to the Central District's decision in *California Rifle &*

8    *Pistol Association*, which held that California failed to carry its burden under *Bruen*

9    with the same arguments it repurposes here. 745 F. Supp. 3d at 1064–67. The Central

10    District's analysis is well-founded, and Plaintiffs explained in their opening brief how

11    the State's recycled evidence falls far short of what *Bruen* and *Rahimi* demand. ECF

12    17-1, 8–13.

13        The State leads by arguing that the non-resident carry ban is consistent with

14    historical laws generally "governing the possession and sale of firearms," which it

15    claims shows a "historical principle of requiring a permit before an individual could

16    carry weapons in a jurisdiction." Br. 11, 12. The existence of historical licensing

17    regimes does not mean that every licensing restriction is constitutional. *Bruen*

18    cautioned against defining the analogical inquiry at such a high level: "[B]ecause

19    '[e]verything is similar in infinite ways to everything else,' one needs 'some metric

20    enabling the analogizer to assess which similarities are important and which are not.'"

21    597 U.S. at 29 (citations omitted). If California could satisfy *Bruen*'s test by pointing

22    to such a loose tradition, every permitting law would sail through.

23        Setting that critical flaw aside, the State's argument proves Plaintiffs' point:

24    They are seeking the opportunity to apply for a carry license on equal footing with

25    Californians. To the extent there is a historical tradition of requiring licensure,

26    Plaintiffs seek to be a part of that tradition.

27        The State next argues that there is a historical tradition of "limiting permits to

28    those whose backgrounds could be vetted, including to local residents." Br. 11, 12.

(To be sure, Plaintiffs are merely seeking the chance to "be vetted" on the same terms as California residents.) Plaintiffs have addressed these laws at length in their opening brief, ECF 17-1, 10–13, and the State offers little in opposition. Without belaboring Plaintiffs' previous arguments, a brief response to each category of purported historical analogues illustrates that California has failed to demonstrate a sufficient historical tradition to justify its prohibition on non-resident carry.

*A Few Colonial Regulations To Thwart Arming Indians, Who May Attack*

The handful of colonial regulations governing trade with Indians, Br. 13:1–16, are too few in number and too dissimilar from the non-resident carry ban to establish a historical tradition. As an initial matter, laws aimed at restricting Indians' access to arms are no guide as to how the Constitution should be interpreted to apply because, at the time, Indians were not considered to be among "the People" protected under the Constitution. *United States v. Harrison*, 654 F. Supp. 3d 1191, 1216 (W.D. Okla. 2023). "It makes little sense to argue . . . that historical restrictions placed on non-citizens, who were not accorded constitutional protections, now justify placing similar modern restrictions on citizens who do enjoy constitutional rights." *Rhode v. Bonta*, 713 F. Supp. 3d 865, 883 (S.D. Cal. 2024).

They also flunk *Bruen*'s test. The point of these laws was to prevent arming Indians who could then use those arms to attack colonists (different "why"). And the laws did not prevent non-residents from carrying arms or ammunition they already had (different "how"). ECF 17-1, 10:14–12:13. Indeed, the State has no answer to the fact that these Colonial Era anti-Indian-trading laws were specifically addressed at preventing the flow of arms to Indians "by indirect means," as through the sale of arms "to any person inhabiting out of [the] jurisdiction" (*i.e.*, a non-resident) who would then resell those arms to Indians. ECF 17-1, 10:21–11:20. These laws are not "relevantly similar," *Bruen*, 597 U.S. at 28–29, to the non-resident carry ban.

*Some Late-19th And Early-20th Century Restrictions That Permitted Open Carry*

A few late 19th-century municipal licensing regulations and a handful of early 20th-century laws, Br. 13:17–14:19, come too late in time and are too few in number to be probative of the Second Amendment's scope. That said, many of these regulations explicitly provided non-residents with an opportunity to apply. ECF 17-1, 12:21–13:2. Moreover, these historical restrictions focused on concealed carry (the restrictions apply specifically to "concealed" or "hidden" weapons), but they did not prevent open carry. *See* Rivas Decl., ¶¶ 19 (acknowledging that late-19th-century regulations required the carry "in full open view"); 21 (citing 1801 Tennessee law that required weapons "appear in full open view," and acknowledging that most carry restrictions applied to concealed carry). To that end, the State fails to mention that the 1880 Brooklyn law it touts applied only to concealed carry.[2] Nor does the State acknowledge that the 1881 New York City law likewise permitted open carry.[3] Milwaukee's 1896 law, too, applied only to weapons "concealed about [the] person."[4] The net effect is that, even if there were some restrictions on non-residents, non-residents nevertheless retained an avenue to carry firearms in public. By contrast, California's law imposes a severe burden on the right to armed self-defense by preventing non-residents from carrying altogether.

*Hunting Laws That Did Not Restrict Public Carry Of Firearms In General*

The two Founding-era hunting laws (directed at the preservation of deer) have little in common with the non-resident carry ban, as do the mid-19th century hunting regulations. Br. 14:20–24. These laws—which restricted only hunting, not bearing arms in general—imposed a far lesser burden on armed self-defense than California's flat ban on non-resident carry and were enacted for a distinctly different purpose. ECF

---

[2] Brooklyn, N.Y., Ordinance to Regulate the Carrying of Pistols (1880), §§ 1, 5 (criminalizing the unlicensed carrying of pistols "concealed on the person").

[3] Carrying of Pistols, N.Y.C., Ordinances ch. 8, art. 27, §§ 264, 266 (1881) (criminalizing the carry of pistols "concealed on [the] person, or not carried openly").

[4] The General Ordinances of the City of Milwaukee (1896), ch. 20, § 25.

17-1, 12:14–20. These laws neither "impose a comparable burden on the right of armed self-defense" nor are they "comparably justified." *Bruen*, 597 U.S. at 29.

*   *   *

In total, the State's ragtag collection of laws is insufficient to constitute a "well-established and representative" historical tradition of regulation of any kind. *Bruen*, 597 U.S. at 30. This is especially so given that *Bruen* makes clear that concerns motivating public carry restrictions date back to the Founding era. "*Bruen* instructs that historical analogues inconsistent with the 'overwhelming weight of other evidence' are undeserving of much weight, especially those laws that governed only a few colonies or territories, affected a small population, or were enacted in the late 19th century or later." *Wolford*, 116 F.4th at 978 (quoting *Bruen*, 597 U.S. at 66). The Central District already summed up how the State has fallen short in this case:

> Without identifying any similar laws before *either* the Founding or Reconstruction, the State has not carried its burden at this stage to show that the limitation of CCW licenses to California residents is part of a historical tradition of this Nation. [Citation] That there were laws from the Founding era demonstrating a (purported) consensus among the states of regulating the manner of carrying within each state does not, as the State argues, speak to whether the States during the Founding era limited the ability to carry firearms to only their residents. The State has pointed the Court to no history on that point. The State has thus failed to demonstrate that it is likely that its residency requirement to apply for a CCW license is part of a historical tradition of this Nation.

*Cal. Rifle & Pistol Ass'n*, 745 F. Supp. 3d at 1066–67 (citation to *Bruen* and footnote omitted). So too here.

In the midst of its historical analysis, the State shoehorns-in the claim that, even if non-residents were allowed to apply for carry licenses, its current background check practices might be insufficient to catch a licensee who later becomes prohibited from possessing firearms. Br. 15. This gambit appears to be aimed at forcing the analysis back toward the two-step interest-balancing test that *Bruen* rejected, based on general notions of the police power or public safety. The Supreme Court left no room for doubt that this is inappropriate: "To justify its regulation, [California] may not simply posit that the regulation promotes an important interest." *Bruen*, 597 U.S. at 17. And courts

may not "engage in independent means-end scrutiny under the guise of an analogical inquiry." *Id.* at 39 n.7. Put simply, the State's administrative concerns have no place in *Bruen*'s historical analysis.

In sum, California's non-resident carry ban is not "consistent with the principles that underpin the Nation's regulatory tradition." *Rahimi*, 602 U.S. at 681.

## B. California's Non-Resident Carry Ban Violates The Privileges And Immunities Clause.

The non-resident carry ban also violates the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution because it favors California residents and discriminates against non-residents in the exercise of a fundamental right. The parties agree on the traditional two-step mode of analysis.

### 1. The Right To Publicly Carry Firearms For Self-Defense Falls Within The Privileges and Immunities Clause's Purview.

At the first step of the Privileges and Immunities analysis, the Court "decide[s] whether the activity in question is 'sufficiently basic to the livelihood of the nation . . . as to fall within the purview of the Privileges and Immunities Clause.'" *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 934 (9th Cir. 2008) (quoting *Supreme Ct. of Virginia v. Friedman*, 487 U.S. 59, 64 (1988)). The plaintiff bears the initial burden of "show[ing] that the challenged law treats nonresidents differently from residents and impinges upon a 'fundamental' privilege or immunity protected by the Clause." *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016) (quoting *United Bldg. and Constr. Trades Council v. Camden*, 465 U.S. 208, 218 (1984)); *see Corfield v. Coryell*, 6 F. Cas. 546, 551 (C.C.E.D. Pa. 1823) (Washington, J.) (No. 3,230) (the Clause applies to rights "which belong, of right, to the citizens of all free governments").

Plaintiffs have met their burden. California's licensing scheme implicates the Privileges and Immunities Clause because it favors California residents and discriminates against non-residents in the exercise of the fundamental right to keep

and bear arms. Indeed, the Second Amendment is applicable against the states *because* it protects a fundamental right of citizens. *McDonald v. Chicago*, 561 U.S. 742, 778 (2010) (the right to keep and bear arms is among the "fundamental rights necessary to our system of ordered liberty"). Moreover, the Supreme Court recognized in *Bruen* that "[t]he Second Amendment's plain text thus presumptively guarantees . . . a right to 'bear' arms in public for self-defense." 597 U.S. at 33. Accordingly, Plaintiffs' desire to obtain the carry license necessary to exercise their Second Amendment protected rights "'fall[s] within the purview of the Privileges and Immunities Clause.'" *Friedman*, 487 U.S. at 64 (citation omitted).

The State responds by insisting that the Privileges and Immunities Clause only reaches economic activity and, therefore, Plaintiffs' Second Amendment protected rights do not suffice because they are "not related to economic activity in any specific sense." Br. 18. That is not the law. "The [Supreme] Court has never held that the Privileges and Immunities Clause protects only economic interests." *Supreme Ct. of New Hampshire v. Piper*, 470 U.S. 274, 281 n.11 (1985). In *Piper*, the Court went out of its way to emphasize that the "noncommercial role" of the practice of law "falls within the ambit of the Privileges and Immunities Clause." *Id.* at 281. It explained: "The lawyer who champions unpopular causes surely is as important to the 'maintenance or well-being of the Union,' as was the shrimp fisherman in [*Toomer v. Witsell*, 334 U.S. 385 (1948)], or the pipeline worker in [*Hicklin v. Orbeck*, 437 U.S. 518 (1978)]." *Id.* at 281–82 (quoting *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 388 (1978)).

The *Piper* Court cited *Doe v. Bolton*, 410 U.S. 179 (1973), as an example of the Clause's application beyond economic interests. In *Bolton*, the Supreme Court held that a Georgia statute barring non-residents from obtaining abortions in Georgia facilities violated the Privileges and Immunities Clause. 410 U.S. at 200. It explained that, contrary to the State's argument here, the Clause is not narrowly confined to economic rights: "Just as the [Privileges and Immunities Clause] protects persons who

enter other States to ply their trade, so must it protect persons who enter Georgia seeking the medical services that are available there." *Id.* (cleaned up).[5]

The same goes for the Second Amendment. The constitutionally protected right to carry handguns in public for self-defense certainly is at least "as important to the 'maintenance or well-being of the Union,'" *Piper*, 470 U.S. at 281, as the shrimper, the roughneck, the lawyer, or woman who crosses state lines seeking an abortion. To hold otherwise would reduce the Second Amendment to "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 597 U.S. at 70 (citation omitted).

### 2. The Non-Resident Carry Ban Is Not Adequately Tailored To The State's Public Safety Interest.

Turning to the second step of the Privileges and Immunities analysis, "the burden shifts to the state to show that the challenged law is 'closely related to the advancement of a substantial state interest.'" *Marilley*, 844 F.3d at 846 (quoting *Friedman*, 487 U.S. at 65); *see also Hicklin*, 437 U.S. at 526 (emphasizing that "there must be a 'reasonable relationship between the danger represented by non-citizens, as a class, and the . . . discrimination practiced upon them'" (citation omitted)). In this inquiry, "the availability of less restrictive means" guides the Court's analysis of whether a discriminatory law is adequately tailored. *Piper*, 470 U.S. at 284.

As emphasized in Plaintiffs' opening brief, California's choice to fully deprive non-residents of any opportunity to carry firearms in public violates the Clause because "the degree of discrimination" against non-residents does not "bear[] a close relation" to any justification the State could offer in defense. *Friedman*, 487 U.S. at

---

[5] Relying on this authority, other circuits have recognized that the Privileges and Immunities Clause extends beyond economic interests. *See, e.g.*, *Nelson v. Geringer*, 295 F.3d 1082, 1090 & n.8 (10th Cir. 2002) (holding that participating in the National Guard "to promote a sense and a mission of national unity" is a "privilege" protected by the Clause); *Lee v. Minner*, 458 F.3d 194, 199–200 (3d Cir. 2006) (the "right of noncitizens to access public records" that furthers "political advocacy regarding matters of national interest or interests common between the states" is protected by the Clause).

67; *see* ECF 17-1, 16:1–20. Plaintiffs ask only that they be subject to precisely the same application process, background check, training requirements, and oversight as generally apply to California residents. And Plaintiffs only seek to obtain carry licenses that are subject to the same conditions and limitations as generally apply to Californians. In short, if the State has public safety concerns with issuing licenses to non-residents, "it can protect these interests through other equally or more effective means that do not themselves infringe constitutional protections." *Friedman*, 487 U.S. at 69.

The State offers two interrelated practical points instead of engaging with the actual test. First, it argues that its existing processes may not prove sufficient to adequately monitor out-of-state licensees given the interplay in the State's criminal record databases. To summarize the point: If a Californian commits a crime in California, the California Department of Justice knows about it; if a Minnesotan is convicted of a crime in Minnesota, DOJ may not learn about it unless it looks. Br. 19–20. Second, and relatedly, the State claims that the burden of processing non-resident concealed carry applications could be significant and it would be unable to "adequately monitor non-residents for disqualifying conditions." Br. 20–21. In essence, the State is arguing that, given these supposed logistical issues, it doesn't have to accommodate non-residents' interests with any "tailoring" whatsoever.

Even granting that the State has a general public safety interest in overseeing concealed carry licenses granted to non-residents, an outright ban is not adequately tailored to address these professed concerns. The State could take "less restrictive means" that allow non-residents to apply for a concealed carry license. The stipulated preliminary injunction in *California Rifle & Pistol Association* provides a template for the Court. The Central District's preliminary injunction order directed the parties to confer and submit a joint order setting out a process permitting the non-resident plaintiffs—which, as here, include several individuals and a nationwide firearms

advocacy organization—to apply for concealed carry permits. 745 F. Supp. 3d at 1071.

The framework that Defendant agreed to in that case ensures that non-resident applicants abide by all relevant laws governing concealed carry licenses issued to California residents. Order Entering Preliminary Injunction, *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, No. 2:23-cv-10169, ECF No. 81 (C.D. Cal. Jan. 22, 2025).[6] The State's negotiation of and assent to these terms confirms that the State "can protect [its] interests through other equally or more effective means that do not themselves infringe constitutional protections." *Friedman*, 487 U.S. at 69. The Court should order California to follow that same protocol here.

\*   \*   \*

In sum, California's non-resident carry ban violates the Privileges and Immunities Clause.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening brief, the Court should grant Plaintiffs' motion for summary judgment.

Dated:  April 11, 2025                          BENBROOK LAW GROUP, PC

                                                        By  s/ Bradley A. Benbrook
                                                        BRADLEY A. BENBROOK
                                                        STEPHEN M. DUVERNAY
                                                        Attorneys for Plaintiffs

---

[6] A true and correct copy of the Central District's preliminary injunction order is attached to this brief as <u>Exhibit 1</u>.