ROB BONTA
Attorney General of California
MARK R. BECKINGTON
JOHN D. ECHEVERRIA
Supervising Deputy Attorneys General
KRISTI HUGHES
WILL SETRAKIAN
Deputy Attorneys General
State Bar No. 335045
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6668
E-mail: William.Setrakian@doj.ca.gov
*Attorneys for Defendant Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER J. HOFFMAN, ET AL.,**<br>Plaintiffs,<br>**v.**<br>**ROB BONTA, in his official capacity as Attorney General of California,**<br>Defendant. | 3:24-cv-00664-CAB-MMP<br>**DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br>Date: To Be Set<br>Time: To Be Set<br>Dept: 15A<br>Judge: Hon. Cathy Ann Bencivengo<br>Trial Date: Not Yet Set<br>Action Filed: April 11, 2024 |

# TABLE OF CONTENTS


Page

Introduction ..... 1

Argument ..... 1

I. Attorney General Bonta Is Entitled to Summary Judgment on Plaintiffs' Second Amendment Claim ..... 1

A. Plaintiffs' Proposed Conduct Does Not Implicate the Second Amendment ..... 1

B. An Enduring Historical Principle Supports States' Rights to Limit Firearm Ownership to Those Whose Backgrounds Can Be Ascertained ..... 5

II. Attorney General Bonta Is Entitled to Summary Judgment on Plaintiffs' Privileges-and-Immunities Claim ..... 8

Conclusion ..... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**


*B & L Prods., Inc. v. Newsom*
104 F.4th 108 (9th Cir. 2024) .................................................... 1

*Baldwin v. Fish & Game Comm'n of Montana*
436 U.S. 371 (1978) .................................................... 8

*Bondi v. VanDerStok*
145 S. Ct. 857 (2025) .................................................... 3

*Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't*
No. 2:23-cv-10169 (C.D. Cal. Aug. 20, 2024) .................................................... 7

*Culp v. Raoul*
921 F.3d 646 (7th Cir. 2019) .................................................... 8

*District of Columbia v. Heller*
554 U.S. 570 (2008) .................................................... 1

*Doe v. Bolton*
410 U.S. 179 (1973) .................................................... 8, 9

*Doe v. City of Albuquerque*
667 F.3d 1111 (10th Cir. 2012) .................................................... 4

*Hoye v. City of Oakland*
653 F.3d 835 (9th Cir. 2011) .................................................... 3

*Maryland Shall-Issue, Inc. v. Moore*
116 F.4th 211 (4th Cir. 2024) .................................................... 2

*McDonald v. City of Chicago*
561 U.S. 742 (2010) .................................................... 8

*McRorey v. Garland*
99 F.4th 831 (5th Cir. 2024) .................................................... 2

*Moody v. NetChoice, LLC*
603 U.S. 707 (2024) .................................................... 3

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*New York State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022) ........................................................................... *passim*

*Peruta v. Cnty. of San Diego*
824 F.3d 919 (9th Cir. 2016) ........................................................................ 9

*Rothery v. Cnty. of Sacramento*
700 F. App'x 782 (9th Cir. 2017) ................................................................... 9

*Sup. Ct. of New Hampshire v. Piper*
470 U.S. 274 (1985) ..................................................................................... 8

*Sup. Ct. of Virginia v. Friedman*
487 U.S. 59 (1988) ................................................................................... 8, 9

*United States v. Duarte*
— F.4th — (9th Cir. May 9, 2025) ................................................................ 6

*United States v. Mendoza*
464 U.S. 154 (1984) ..................................................................................... 7

*United States v. Perez-Garcia*
96 F.4th 1166 (9th Cir. 2024) ........................................................................ 6

*United States v. Rahimi*
602 U.S. 680 (2024) ............................................................................ *passim*

*United States v. Rahimi*
61 F.4th 443 (5th Cir.) .................................................................................. 3

*United States v. Rahimi*
No. 22-915 (U.S. Sept. 27, 2023) ................................................................... 4

*Wolford v. Lopez*
116 F.4th 959 (9th Cir. 2024) ........................................................................ 5

**STATUTES**

Cal. Penal Code § 29800 ................................................................................ 3

## TABLE OF AUTHORITIES
**(continued)**

**Page**

**CONSTITUTIONAL PROVISIONS**

Second Amendment ........................................................................................ *passim*

## INTRODUCTION

Plaintiffs' Consolidated Opposition to the Attorney General's Cross-Motion mischaracterizes the Attorney General's position, misperceives the importance of the Attorney General's cited rationales, and mistakenly echoes Second Amendment arguments that the Supreme Court has rejected. The Court should grant the Attorney General's Motion for Summary Judgment and deny Plaintiffs' Motion.

## ARGUMENT

### I. ATTORNEY GENERAL BONTA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' SECOND AMENDMENT CLAIM

Attorney General Bonta is entitled to summary judgment at both stages of *New York State Rifle & Pistol Association v. Bruen*'s two-step test.

#### A. Plaintiffs' Proposed Conduct Does Not Implicate the Second Amendment

As explained, *see* ECF No. 18 at 13–15, Plaintiffs do not meet their burden of showing that the Second Amendment's text covers their conduct, *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 120 (9th Cir. 2024), and their Consolidated Opposition does not overcome this deficiency.

First, the Supreme Court has indicated that shall-issue licensing regimes are permissible under the Second Amendment. Permitting regimes like the one here are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 n.9 (2022). Shall-issue licensing regimes do not deprive law-abiding individuals of their right to bear arms in public for self-defense. *See District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) (Second Amendment protects "the right of law-abiding, responsible citizens to use arms").

Plaintiffs reply that "[u]nder the [Attorney General]'s logic," this reasoning would exclude permitting regimes like this one from Second Amendment scrutiny. ECF No. 19 at 7. But this is not just the Attorney General's logic—it is the reasoning that the Supreme Court relied on in *Bruen* to approve the licensing

regimes in 43 shall-issue jurisdictions, so long as those regimes are not "put toward abusive ends," *Bruen*, 597 U.S. at 38, n.9—something that Plaintiffs do not argue here. As several circuits have recognized, this portion of *Bruen* proceeded from the premise that the described licensing laws are permissible under the Second Amendment, thereby passing step one. *Maryland Shall-Issue, Inc. v. Moore*, 116 F.4th 211, 221, 224 (4th Cir. 2024) (en banc) (reasoning that "[t]he [Supreme] Court explained that 'shall-issue' licensing laws, which employ 'narrow, objective, and definite standards' and do not give authorities discretion with regard to issuing a license, ordinarily do not prevent law-abiding individuals from exercising their Second Amendment rights. Thus, such laws generally do not 'infringe' the right to keep and bear arms," and "the Court grounded the 'shall-issue' discussion in step one."); *McRorey v. Garland*, 99 F.4th 831, 837–38 (5th Cir. 2024). Because the licensing regime here does not implicate the Second Amendment, Plaintiffs have failed to satisfy their *Bruen* step-one burden. *Bruen*, 597 U.S. at 24. As a result, Plaintiffs' argument that "the people" refers to all members of the political community, ECF No. 19 at 9, does not aid them. If Plaintiffs were correct, the above cases would have come out differently, because shall-issue regimes—which ask whether an applicant is over a certain age, lacks disqualifying convictions, and other similar inquiries—would constrict the definition of "the people," triggering the history-and-tradition analysis. Instead, *Maryland Shall Issue* and *McRorey* held that such laws do not do so. This Court should as well, for the reasons given above.

Plaintiffs suggest that they seek only the right to apply for a permit, not necessarily to receive one, and that missing out on a chance to apply restricts their Second Amendment rights. ECF No. 19 at 8–9. But this argument does not avoid the reasoning of the cases above—*Bruen* confirmed that simple licensing restrictions do not trigger the step-two history-and-tradition analysis because they let jurisdictions confirm that individuals are law-abiding. And a claim based on a

purported right merely to apply for a license, without more, would not sound in the Second Amendment.

Second, the Attorney General is entitled to summary judgment at step one of the *Bruen* analysis because Plaintiffs launch a disfavored—and, here, doomed—facial challenge. Under a facial challenge, if constitutional faults do not "occur in every case, they do not justify invalidating [a challenged law] on its face." *United States v. Rahimi*, 602 U.S. 680, 701 n.2 (2024); ECF No. 18 at 16–17. California's ban on carry by non-residents is not unconstitutional as applied to violent felons—to give one of many examples—because they could not secure carry permits. *See, e.g.*, Cal. Penal Code § 29800.

Recognizing these objections, Plaintiffs advance several responses, but all fail. They first flee their facial challenge, disputing how clearly facial and as-applied challenges differ. ECF No. 19 at 10. But this argument pulls from older caselaw, ignoring the Supreme Court's recent (and repeated) guidance that facial challenges are "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); *see also Rahimi*, 602 U.S. at 701 n.2; *Bondi v. VanDerStok*, 145 S. Ct. 857, 869–70 (2025).

Plaintiffs next ask the Court to "grant relief to remedy the unconstitutional application of the non-resident carry ban to the Plaintiffs and others who, but for their out-of-state residence, would otherwise be eligible for a license." ECF No. 19 at 10. That, of course, is an as-applied attack—a challenge to "a subset of the statute's applications." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). The Court should reject Plaintiffs' attempt to rehabilitate their case.

Plaintiffs finally challenge whether their case even fails facially. It does. To see how, the Court should consider the briefing in *Rahimi*, because Plaintiffs adopt arguments that the Supreme Court rejected there. In *Rahimi*, the Fifth Circuit concluded "that if a statute is inconsistent with the Second Amendment's text and historical understanding, then it falls under any circumstances." *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir.), *rev'd*, 602 U.S. 680 (2024). Rahimi's counsel

highlighted this before the Supreme Court, centering the Fifth Circuit's reasoning that the challenged law facially violated the Constitution because it "prohibit[ed] conduct that is presumptively protected by the Second Amendment." Brief for Respondent at 7, *United States v. Rahimi*, No. 22-915 (U.S. Sept. 27, 2023). Plaintiffs make the same argument here, positing that "there is no situation where the non-resident carry ban passes constitutional muster," ECF No. 19 at 10, and later explaining that that is because it "fails the relevant constitutional test," *id.* at 12 (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012)).

But the Supreme Court rejected this attempt to skip over the facial/as-applied distinction. The Court chided the Fifth Circuit (and, by extension, Rahimi's counsel) for not "consider[ing] the circumstances in which [the challenged law] was most likely to be constitutional." *Rahimi*, 602 U.S. at 701. Such circumstances in *Rahimi*, a case concerning a law disarming anyone subject to a domestic violence restraining order, involved disarming "individuals who present a credible threat to the physical safety of others," *id.* at 700, so the facial analysis should have considered whether the challenged law was constitutional in such a case. Here, Plaintiffs' facial challenge fails to consider cases in which the law is most likely to be constitutional, like those concerning an applicant who had disqualifying convictions that could not be discovered by California's system for vetting CCW applicants, ECF No. 18-2 at ¶¶ 7–10, and could be permissibly barred from obtaining a CCW permit. ECF No. 18 at 17.

California's law thus does not implicate the Second Amendment at step one of the *Bruen* analysis. And even if it does in some contexts, Plaintiffs' choice to pursue an all-or-nothing facial challenge dooms their claim at *Bruen*'s first step. The Court should end its Second Amendment analysis here and award summary judgment to the Attorney General.

### B. An Enduring Historical Principle Supports States' Rights to Limit Firearm Ownership to Those Whose Backgrounds Can Be Ascertained

Even if the Court proceeds to step two of the *Bruen* analysis, the Attorney General should prevail. The Attorney General's Motion for Summary Judgment shows the well-established historical principles supporting restricting the right to carry concealed to those whose non-dangerousness could be verified, including by limiting licensure to in-state residents. ECF No. 18 at 19–25. Plaintiffs' Consolidated Opposition, like their opening brief, unsuccessfully attempts to undermine the Attorney General's historical record by too narrowly defining the relevant historical period—an approach the Supreme Court has rejected. *See*, *e.g.*, *Rahimi*, 602 U.S. at 691–92 (noting that "some courts have misunderstood the methodology of our recent Second Amendment cases," and stating that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791."); *see also id.* at 695–97 (determining historical tradition from English common law from 1600s, as well as laws from 1700s and early 1800s). Plaintiffs first assert that the Attorney General focuses on the wrong time period, especially assailing the Attorney General's use of Reconstruction-era history. ECF No. 19 at 13–14. But as the Attorney General's opening brief set out, Reconstruction-era history can inform the historical analysis. ECF No. 18 at 18–19. Indeed, it is the law of this circuit that Reconstruction-era history alone can furnish sufficient evidence to pass step two of the *Bruen* test. *See id.* at 18 (citing *Wolford v. Lopez*, 116 F.4th 959, 987–89 (9th Cir. 2024)).

Again concerning time periods, Plaintiffs argue that the Attorney General's Motion provides no Founding-era laws. That is incorrect; as the Attorney General's Motion shows, four colonies barred the trade of weapons outside of the jurisdiction even before the Founding. ECF No. 18 at 11-12. To the extent that Plaintiffs mean that these laws lack weight because they were enacted before 1789, evidence of colonial law is highly relevant in the *Bruen* analysis: *Bruen* cautioned

against relying on "ancient" historical practices never "acted upon or accepted in the colonies." 597 U.S. at 35 (quotation omitted). But the laws cited by the Attorney General do not rank as "ancient," coming about in the seventeenth century, and of course were acted upon and accepted in several colonies. ECF No. 18 at 24. And the Court "may consider pre . . . ratification history to the extent that it does not contravene founding-era evidence." *United States v. Duarte*, — F.4th —, 2025 WL 1352411, at *9 (9th Cir. May 9, 2025) (en banc) (examining historical regulations from before ratification of the Second Amendment).

Moving to the heart of the *Bruen* step-two analysis, Plaintiffs spend pages nitpicking the Attorney General's chosen laws, as described on page 7, *infra*. They grasp at evidence showing that a given law is not a "historical twin" or a "dead ringer." *Bruen*, 597 U.S. at 30. In doing so, Plaintiffs ignore *Rahimi*'s recognition that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791," instead going down a path "as mistaken as applying the protections of the right only to muskets and sabers." 602 U.S. at 691–92.

Instead, the cited laws reflect a tradition of states' limiting permits to those whose backgrounds could be vetted, including to only local residents. ECF No. 18 at 20–22. Plaintiffs even concede that "a few" or "a handful" of the presented laws pass muster. ECF No. 19 at 16. For this reason, Plaintiffs' argument that they "seek to be a part of th[e] tradition" of licensure, ECF No. 19 at 14, misperceives the historical record compiled: the Attorney General may exclude from licensures individuals, like plaintiffs here, whose backgrounds cannot be vetted by the State. ECF No. 18 at 19–25.

Plaintiffs' attempts to "divide[ ]and[ ]conquer" the Attorney General's laws likewise fail. *United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024). First, Plaintiffs argue that the many seventeenth-century laws barring trade with "any person" living outside of a jurisdiction actually concerned only trade with

Indians. ECF No. 19 at 15. That flies in the face of the laws' language, as already identified: the laws often operated in the disjunctive, separately barring trade with Indians *or* with any non-resident. ECF No. 18 at 21. To be sure, as Plaintiffs identify, Connecticut's law gave anti-circumvention on bans on Indian sales as a justification. ECF No. 17-1 at 11. But even if Plaintiffs were correct about the Connecticut's law, Plaintiffs still offer no rejoinder to the laws of Massachusetts, New York, and Pennsylvania, all of which passed laws exemplifying the historical principle justifying California's law. ECF No. 18 at 21.

Plaintiffs' additional rejoinders continue to echo the lone dissenter in *Rahimi*. They argue the Attorney General's presented hunting laws base themselves on a different "how" than the law challenged here, asserting that those laws "imposed a far lesser burden on armed self-defense than" the challenged law. ECF No. 19 at 16. That directly tracks the *Rahimi*'s dissent's protestation that the proffered historical analogues "imposed a materially different burden" because the "demand did not alter an individual's right to keep and bear arms." *Rahimi*, 602 U.S. at 764 (Thomas, J., dissenting). That argument, of course, fell before the eight-Justice Majority's conclusion that *Bruen*'s step-two analysis requires identifying a "historical principle." *Rahimi*, 602 U.S. at 692. The Attorney General has done so here.

In sum, Plaintiffs' attempts to dispute the Attorney General's precedents and regulatory principle fail. The Court should uphold the licensing requirement.[1]

[1]Plaintiffs repeatedly note that a District Court in California's Central District has preliminarily ruled in accordance with their position. ECF No. 19 at 6, 7, 17, 22. But courts do not apply non-mutual collateral estoppel against the government, because the doctrine "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *United States v. Mendoza*, 464 U.S. 154, 160 (1984). And here, that impulse has even more force, because there has been no "final decision rendered" on this issue. *Id.* Additionally, Plaintiffs mischaracterize the procedural posture of the other case, stating that there has been a "negotiation and assent to the[] terms" in the injunction. ECF No. 19 at 22. Instead, the Central District Court ordered the parties to confer on a proposed injunction. Order Granting in Part, Denying in Part, Plaintiffs' Motion for Preliminary Injunction at 44, *Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't*, No. 2:23-cv-10169 (C.D. Cal. Aug. 20, 2024).

## II. ATTORNEY GENERAL BONTA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PRIVILEGES-AND-IMMUNITIES CLAIM

Plaintiffs' Privileges and Immunities Clause position fares no better than their Second Amendment arguments. The first step of the Clause's test asks whether the activity in question is "sufficiently basic to the livelihood of the Nation as to fall within the purview" of the Clause. *Sup. Ct. of Virginia v. Friedman*, 487 U.S. 59, 64, (1988). As the Attorney General's Motion explained, the Supreme Court has focused on almost exclusively economic rights in applying this language. ECF No. 18 at 26. Plaintiffs respond that the Clause sweeps more broadly, pointing to *McDonald v. City of Chicago*'s language about the Second Amendment's importance. ECF No. 19 at 19. But *McDonald*'s conclusion that the Second Amendment enumerated a fundamental right of citizenship for purposes of the Fourteenth Amendment's Due Process Clause does not control Article IV's Privileges-and-Immunities Clause.

Instead, step one of the Privileges-and-Immunities analysis looks to the economic ramifications of state law, because the Clause "was intended to create a national economic union." *Sup. Ct. of New Hampshire v. Piper*, 470 U.S. 274, 279–80 & n.8 (1985). Courts thus invoke the Privileges & Immunities Clause in cases concerning the ability to hold a job or earn a wage. *Id.* at 280 (collecting cases). The Clause does not, by contrast, extend to conduct that is "not a means to the nonresident's livelihood." *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 388 (1978). Thus, even if the Clause is not always limited to solely economic interests, *Piper*, 470 U.S. at 281 n.11, those are undoubtedly its focus, and precedent does not support its expansion to the right to carry a firearm across state lines. *Culp v. Raoul*, 921 F.3d 646, 657 (7th Cir. 2019).

Plaintiffs respond that *Doe v. Bolton* compels a contrary conclusion. ECF No. 19 at 19–20. But that opinion holds only that the Privileges and Immunities Clause cannot be used to let a state "limit to its own residents the general medical care

available within its borders." *Doe v. Bolton*, 410 U.S. 179, 200 (1973), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). *Doe*'s one-paragraph discussion says nothing relevant about the Clause's scope, and never hints that it extends to cover interstate carry of a firearm. The Court accordingly should conclude its Privileges and Immunities analysis at the first step and grant summary judgment to the Attorney General. [2]

Should the Court move to step two of the Privileges and Immunities examination, the Attorney General should still prevail. The second step considers whether a challenged restriction "closely relate[s] to the advancement of a substantial state interest." *Friedman*, 487 U.S. at 65. The Attorney General undertakes significant work to ensure that CCW license-holders remain lawful licensees. ECF No. 18 at 27; ECF No. 18-2 at ¶¶ 4–6. Monitoring out-of-state licensees for disqualifying events like criminal convictions could severely burden State resources. ECF No. 18 at 27–28; ECF No. 18-2 at ¶¶ 7–9.

Plaintiffs respond by downplaying this burden, crediting the Attorney General's interest but calling the challenged law insufficiently tailored. ECF No. 19 at 20. But the Attorney General's Motion refuted this. California's system for monitoring CCW license holders for disqualifying criminal convictions does not provide information on activity outside of the State. ECF No. 18-2 at ¶¶ 4–6. Reconstructing it to do so would impose serious administrative burdens. *Id.* at ¶¶ 7–8. The challenged law, tailored to the realities of license verification, thus vindicates a substantial state interest. It is accordingly one of "the many situations where there are perfectly valid independent reasons for" differential treatment between State and non-State residents. *Toomer*, 334 U.S. at 396.

---

[2]Even if a right to carry handguns in public for self-defense were otherwise protected by the Privileges and Immunities Clause, *see* ECF No. 19 at 16, a Privileges-and-Immunities claim based on an alleged violation of a Second Amendment right cannot proceed if the Second Amendment claim fails. *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 942 (9th Cir. 2016) (en banc), *overruled on other grounds by Bruen*, 597 U.S. 1; *Rothery v. Cnty. of Sacramento*, 700 F. App'x 782, 783 (9th Cir. 2017) (mem. op.).

Plaintiffs finally advance the remarkable argument that the Attorney General's compliance with a preliminary injunction in a separate case requiring the Attorney General to accept some non-resident CCW applications shows that the Attorney General could "protect [his] interests through other equally or more effective means." ECF No. 19 at 22. That the Attorney General has complied with a judicial decree should not qualify as evidence against the merits of his arguments. Additionally, this preliminary injunction is only very recently in effect, rendering unsubstantiated Plaintiffs' suggestion that the injunction creates a state of affairs in which "the [Attorney General] can protect [his] interests." ECF No. 19 at 22 (internal quotations and edits omitted).

## CONCLUSION

The Court should grant the Attorney General's Motion for Summary Judgment and deny Plaintiffs' Motion.

Dated: May 16, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
JOHN D. ECHEVERRIA
Supervising Deputy Attorneys General
KRISTI HUGHES
Deputy Attorney General

*/s/ Robert William Setrakian*

WILL SETRAKIAN
Deputy Attorney General
*Attorneys for Defendant Attorney General Rob Bonta*

SA2024301668

# CERTIFICATE OF SERVICE

Case Name: **Hoffman, Christopher, et al. v. Rob Bonta** No. **3:24-cv-00664-CAB-MMP**

I hereby certify that on May 16, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on May 16, 2025, at Los Angeles, California.

| Dyan Serzo | D. Serzo |
|---|---|
| Declarant | Signature |

SA2024301668
67648877.docx