UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. HOFFMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of California, <br><br> Defendant. | Case No.: 3:24-cv-664-CAB-MMP <br><br> **ORDER:** <br><br> **(1) GRANTING MOTION FOR SUMMARY JUDGMENT IN PART;** <br><br> **(2) DENYING CROSS-MOTION FOR SUMMARY JUDGMENT IN PART** <br><br> [Doc. Nos. 17, 18] |

The sole issue in this case is whether the Constitution requires California to allow nonresidents to apply for a concealed carry weapons (CCW) license. Plaintiffs, who are not California residents, complain that they are prohibited from carrying a firearm for self-defense when they visit California. For standard two-year licenses, California imposes a residency requirement. Cal. Penal Code § 26155(a)(3). An applicant who has his or her principal place of business or employment within the local permitting jurisdiction may receive a 90-day license. *See* Cal. Penal Code §§ 26150(a)(3), 26220(b). Unlike some states, California does not have a reciprocity policy for CCW licenses. *See* Colo. Rev. Stat.

§ 18–12–213(1) (providing reciprocity and recognition of CCW licenses, but only for states that recognize Colorado's license).

Plaintiffs bring a facial challenge to both California laws as offending the Second and Fourteenth Amendments pursuant to Section 1983. They also argue that the existing regulatory framework infringes on their rights under the Privileges and Immunities Clause. Plaintiffs seek injunctive relief, declaratory relief, and costs and fees. *See Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 681 (9th Cir. 1984) ("Because jurisdiction has been established under § 1983, the separate remedy of declaratory judgment is available.")

Individual Plaintiffs are residents of Pennsylvania, Idaho, and New Mexico. [Hoffman Decl., Doc. No. 17-2 ¶ 2; Orrin Decl., Doc. No. 17-3 ¶ 2; Sensiba Decl., Doc. No. 17-4 ¶ 2.] Each Plaintiff maintains membership in the Firearms Policy Coalition, which is incorporated in Delaware with a primary place of business in Nevada. All individual Plaintiffs maintain validly issued concealed carry licenses issued by another state. [*See, e.g.*, Sensiba Decl. ¶¶ 2–3.]

Individual Plaintiffs desire to carry a firearm in public for self-defense when they visit California—and would do so if California allowed them to. [Hoffman Decl. ¶¶ 6–7; Orrin Decl. ¶¶ 5–6; Sensiba Decl. ¶¶ 4–5.] Each would apply for a CCW license if California provided them the opportunity. [Hoffman Decl. ¶¶ 6–7; Orrin Decl. ¶¶ 5–6; Sensiba Decl. ¶¶ 4–5.]

For example, Plaintiff Hoffman is a California native who held a CCW license issued by the San Diego County Sheriff's Office from 1990 until he moved out of state in 2012. [Hoffman Decl. ¶ 4.] In 2023, he attempted to obtain a CCW license but was denied because of the residency requirement. [*Id.*] Plaintiff Hoffman intends to travel to San Diego County in the future to visit friends and family but cannot legally carry a firearm when doing so. [*Id.*] The other individual Plaintiffs have attested to similar facts. [*See* Sensiba Decl. ¶ 4 ("I have refrained from pursuing certain work assignments that would

have required travel to California because I would not be able to carry a firearm for self-defense[.]").

Plaintiffs filed a motion for summary judgment to which the State responded with a cross-motion for summary judgment.[1]

## I. LEGAL STANDARD

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material only if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when it could "lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where, as here, the opposing party will have the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Olivier v. Baca*, 913 F.3d 852, 857 (9th Cir. 2019) (quoting *Celotex*, 477 U.S. at 325).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation marks omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## II. *BRUEN* ANALYSIS

The Court first addresses Plaintiffs' Second Amendment/Fourteenth Amendment claim. The Second Amendment "guarantee[s] the individual right to possess and carry

---

[1] The State has not challenged individual or organizational standing in this case. Individual Plaintiffs allege a continuing injury of a legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As an organization, the Firearms Policy Coalition also has standing in this case based on the same identified constitutional injury. *See Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (organizational standing turns on "whether the organization itself has suffered an injury in fact").

weapons in case of confrontation." *D.C. v. Heller*, 554 U.S. 570, 592 (2008). This right has been incorporated to the States by means of the Fourteenth Amendment. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010). Courts treat the Second Amendment the same as other enumerated constitutional rights. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). A facial challenge, which Plaintiffs assert, is the "most difficult challenge to mount successfully," because it requires a plaintiff to "establish that no set of circumstances exists under which the [challenged law] would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Under the approach set forth in *Bruen*, the Court begins its analysis by asking a straightforward question: whether the conduct at issue falls within the plain text of the Second Amendment. If the challenged regulation clears this first step, the State bears the burden to "justify its regulation" by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Rahimi*, 602 U.S. at 691 (quoting *Bruen*, 597 U.S. at 24).

### A. Bruen Step One

Plaintiffs have the initial burden to demonstrate that they are "part of the people whom the Second Amendment protects, whether [any] weapon at issue is in common use today for self-defense, and whether the proposed course of conduct falls within the Second Amendment." *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (quotation marks omitted) (citing *Bruen*, 597 U.S. at 31–33).

It is the Court's role to identify and delineate the specific course of conduct at issue. In *Bruen*, this conduct was "carrying handguns publicly for self-defense." *Bruen*, 597 U.S. at 32. The Supreme Court in *Bruen* already conducted a textual analysis of the words "bear" and "keep" to determine that the conduct of publicly carrying a firearm fell within the language of the Second Amendment. *See id.* at 32–33. The conduct at issue here—carrying firearms in public for self-defense—is no different. *See id.* As nonresidents, Plaintiffs are prohibited from engaging in that conduct by state law. *See* Cal. Penal Code

§§ 25400, 26150, 26155. *Bruen* made clear that the text of the Second Amendment does not create a "home/public distinction with respect to the right to keep and bear arms." 597 U.S. at 32.

The State argues in their cross-motion for summary judgment that Plaintiffs have not met their burden because the plain text of the Second Amendment does not mandate that a traveler be allowed to use another state's license to carry in California. [Doc. No. 18 at 15.] In effect, they argue that nonresidents do not qualify as "the people." The Supreme Court has not interpreted "the people" so narrowly. *See Heller*, 554 U.S. at 580 (the people "unambiguously refers to all members of the political community, not an unspecified subset."). Nor has the Ninth Circuit. *See, e.g., United States v. Perez-Garcia*, 96 F.4th 1166, 1178–80 (9th Cir. 2024) (pretrial releasees were part of "the people" because they "remain members of the national community"); *see United States v. Duarte*, 137 F.4th 743, 752–54 (9th Cir. 2025) (en banc) (explaining that individuals with felonies still qualify as "the people" for purposes of the Second Amendment because they are "undoubtedly a member of the national community"). Indeed, it is beyond debate that the individual Plaintiffs are "people" living in the United States. [*See, e.g.*, Sensiba Decl. ¶ 2.]

Like *Bruen*, there is no actual factual dispute about whether Plaintiffs are (or represent) "ordinary, law-abiding, adult citizens"—"the people" whom the Second Amendment protects. *Bruen*, 597 U.S. at 31–32. But the State asserts that a facial challenge must nevertheless fail because potential out-of-state applicants, such as those convicted of violent felonies, could be barred from applying for a CCW license. To be clear: Plaintiffs do not challenge any licensing provision applying to felons. Their lawsuit is limited entirely to permitting nonresidents access to the first step: to apply and be considered on equal footing to resident applicants. Any potential relief does not implicate the hypothetical adjudication of an applicant's felony status or some other challenge to "law-abiding" status. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (courts "must be careful not to go beyond . . . facial requirements and speculate about . . . 'imaginary' cases.").

The Court resolves *Bruen*'s first step in Plaintiffs' favor.

**B. Bruen Step Two**

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. The burden now shifts to the State to show that its complete ban on nonresident carry is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 34. "[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *Rahimi*, 602 U.S. at 691.

This part of the *Bruen* second step places the Court in the position of a historian. *See Rahimi*, 602 U.S. at 744 n.2 (Jackson, J., concurring). Where the regulatory tradition starts, we are instructed, is (generally) the Founding era. *See Bruen*, 597 U.S. at 34. Where the tradition ends may be a more difficult question. But the Supreme Court has placed considerable weight on the views of the ratifiers of the Fourteenth Amendment, *see McDonald*, 561 U.S. at 778, and the Ninth Circuit has followed. *See, e.g., Wolford v. Lopez*, 116 F.4th 959, 980, 987–89 (9th Cir. 2024). The Court may also "consider pre-and post-ratification history to the extent that it does not contravene founding-era evidence." *Duarte*, 137 F.4th at 755. At this second step, the State can meet its burden by offering persuasive legal history pointing to analogues from the historical record. *See Bruen*, 597 U.S. at 30.

The Court starts by recognizing our founding principle of federalism and the corresponding deference given to state police powers.[2] *See Holmes v. Jennison*, 39 U.S. 540, 568 (1840) ("the ordinary police powers of the states" are "necessary to their very existence"). The Supreme Court reiterated these core principles in *McDonald*, stressing that the Second Amendment "by no means eliminates" a state's "ability to devise solutions

---

[2] "The States' core police powers have always included authority to define criminal law and to protect the health, safety, and welfare of their citizens." *Gonzales v. Raich*, 545 U.S. 1, 42 (2005) (O'Connor, J., dissenting) (citing cases). An examination of history and tradition should recognize and give due weight to California's unique regulatory history.

to social problems that suit local needs and values." 561 U.S. at 785. Recognizing that "conditions and problems differ from locality to locality[,]" *id.* at 783, the Court explained that "[s]tate and local experimentation with reasonable firearms regulations" could continue "under the Second Amendment." *Id.* at 785 (alteration in original). In the seminal case of the history/tradition era, the Court held without reservation that the Second Amendment right is "not unlimited," but that the states possess "a variety of tools" to combat gun-related violence. *Heller*, 554 U.S. at 626, 636.

To be a "proper analogue[,]" laws must be "relevantly similar" based on "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 28, 29. The burden on the Second Amendment must be "comparable." *Id.* at 29. The analogues must be "broadly in effect" at the appropriate time period. *Baird v. Bonta*, 81 F.4th 1036, 1040–41 (9th Cir. 2023). The Supreme Court's most recent firearms opinion is instructive. The Court looked to laws that were "[w]ell entrenched in the common law" at the Founding. *See Rahimi*, 602 U.S. at 693–95.

California provides historical analogues relating to various "locality-based licensing laws" from the mid-19th century. Dr. Robert Spitzer, one of the State's experts, offers that licensing statutes in the nineteenth century "tailor[ed] prohibitions to address public-safety threats" posed by firearms. [Spitzer Decl. ¶¶ 27–28; ¶¶ 30–49.] He provides examples of Reconstruction era licensing laws regulating the practice of concealed carry. [*Id.* ¶¶ 30, 31.] These licensing laws went back to the colonies. [Spitzer Decl. ¶ 22.] Nine colonies or states had such laws on the books in the 1700s, and lawmakers in at least 32 states enacted licensing requirements as a prerequisite for carrying or owning weapons during the 1700s and 1800s. [*Id.*] There is no question that the Reconstruction period is rife with examples of state and municipal regulations designed to control individual possession of weapons. [*See, e.g.*, Vorenberg Decl. ¶¶ 27–33, 34.]

The problem for the State is not the licensing laws themselves: Plaintiffs do not seek California's licensing scheme stricken in its entirety. Instead, the State must provide a historical analogue for licensing laws that did not allow nonresidents to apply. For that

category of restriction, the State provides a series of state laws from the early 1900s that appear to impose residency requirements on licenses. [*See* Spitzer Decl. ¶¶ 76–78.] Ignoring that these laws do not date to the Founding or Ratification Era, many laws from the same period explicitly allowed nonresidents to apply. [Spitzer Decl. ¶¶ 71–72.]

Earlier laws identified by the State also appear to support the Plaintiffs' position. For example, Connecticut in 1642 barred the sale of guns to those outside its jurisdiction unless the person possessed a license from a court or magistrate, without an explicit pre-application ban for nonresidents. [Spitzer Decl. ¶ 55.] The historical record also contains laws that provided "traveler exceptions" to carry laws. Sacramento law in 1876, cited by the State, specifically excepted "travelers" from a firearms licensing requirement that applied to residents. [Rivas Decl. ¶ 41]; Ordinance no. 84, Charter and Ordinances of the City of Sacramento, Prohibiting the Carrying of Concealed Deadly Weapons (1876).[3]

Moreover, some historical restrictions offered by the State regulated the carry of "concealed" or "hidden" weapons—but *forced* the open carry of weapons—limiting their applicability. [*See* Rivas Decl. ¶¶ 19 (acknowledging that late-19th-century regulations required the carry "in full open view"); 21 (citing 1801 Tennessee law that required weapons "appear in full open view," and acknowledging that most carry restrictions applied to concealed carry).] The State also provides examples of laws that prevented licensure of Native Americans. These laws have little present application when viewed with an expanded conception of rights-bearing persons. A similar deficiency constrains the Founding Era laws (from New Jersey and North Carolina) that barred nonresidents from hunting within their borders. [Spitzer Decl. ¶¶ 69–70.] Unlike the California law at issue in this case, the identified laws restricted only the activity of hunting, not bearing

---

[3] The City of San Diego appears to have passed a similar provision exempting travelers from licensing requirements, then defined as those individuals who "may be actually making a journey at the time." *See* Ordinance Number 19—An Ordinance for the Prevention of Offenses Against the Peace, Good Order and Health of the City of San Diego, §§ 2, 3, 39, & 41, Board of Trustees of the City of San Diego (June 14, 1886 - January 24, 1887).

arms in general. *Bruen*, 597 U.S. at 29 (historical laws should "impose a comparable burden" or be "comparably justified").

The State argues that the Court may extract a general principle that relevant regulations limited licenses to "acceptable" persons. [Doc. No. 18 at 12.] But weighed against the guidance that a historical regulation must be "comparably justified," California cannot meet its burden with its proffered analogues. The State cannot point to a single law from the Founding or framing tradition that wholesale blocked nonresidents from participating in a general firearms licensing scheme. As the Ninth Circuit has explained, *Bruen* and *Heller* have "imposed a challenging burden on the government where the regulation in question addressed an issue that has existed since the Founding, had not been affected by a technological change, and did not concern a uniquely modern problem." *Wolford*, 116 F.4th at 978.

Opening the application process to nonresidents does not limit California's ability to regulate who receives a CCW license based on other measured parameters. Nonresidents are simply afforded the same chance guaranteed to residents to exercise their Second Amendment rights. In reaching this conclusion, the Court agrees with its sister court in the Central District that the challenged statutory framework's exclusion of nonresidents violates the Second Amendment.[4] Although prompted by Plaintiffs in the briefing, the State offers no response to the persuasive reasoning in that case.

This case has no bearing on whether California can regulate certain firearms or Circuit-defined accessories. *See Duncan v. Bonta*, 133 F.4th 852, 867 (9th Cir. 2025). Nor has the Court decided any issue related to the open carry of firearms—which California generally restricts, even for its residents. *See* Cal. Penal Code § 26350. This Court

---

[4] The plaintiffs in that case, individuals and associational plaintiffs, brought an as-applied challenge to the same statutes. The district judge found the same statutes unconstitutional as applied to plaintiffs even though the court applied "heightened" scrutiny over their claims pursuant to a preliminary injunction standard. *California Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1063 (C.D. Cal. 2024).

confronts the relatively straightforward question of whether a fundamental right protected by the Constitution stops at state lines. Nothing in this order should be construed to mandate that California provide the exact same requirements for a CCW license for residents and nonresidents—the historical record may well contravene such a proposition. [Spitzer Decl. ¶ 69 (identifying an 1899 Wyoming measure that imposed a fee forty times higher on nonresidents for a gun license).] Overburdening nonresidents in the application process may violate Plaintiffs' Second Amendment rights, but parity is not necessarily required. *See Nguyen v. Bonta*, No. 24-2036, 2025 WL 1718079 (9th Cir. 2025) (explaining that the Second Amendment prohibits "meaningful constraints" on the right to acquire firearms).

"[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 602 U.S. at 691–92. The regulations challenged by Plaintiff are not in that permissible category. No reasonable factual dispute precludes a decision at this stage. The Court grants Plaintiffs' motion for summary judgment as to the declaratory action proceeding under the Fourteenth and Second Amendments.[5] The provisions barring nonresidents from applying for CCW licenses violate the Constitution.

### III. INJUNCTIVE RELIEF

As part of their motion for summary judgment, Plaintiffs have sought an injunction. An injunction "is an extraordinary remedy never awarded as a matter of right." *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Given that questions of law predominate over this case, the Court may grant an injunction without a hearing. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir.

---

[5] "Strictly speaking, [California] is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Bruen*, 597 U.S. at 37. But enumerated individual rights made applicable through ratification have the same scope as against the federal government. *See id.*

1986). The Court's *Bruen* analysis makes clear that Plaintiffs have succeeded on the merits of this case.

A Plaintiff must satisfy the following four-factor test for injunctive relief: (1) the plaintiff must suffer irreparable injury; (2) legal remedies are inadequate; (3) an equitable remedy is warranted in light of the balance of hardships between the parties; and (4) a permanent injunction would not disserve the public interest. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

As to the first factor, a violation of a fundamental right is sufficient to show irreparable harm. *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). Even a brief violation is sufficient. *Baird*, 81 F.4th at 1040. And it is generally recognized that there is no adequate remedy at law to rectify a constitutional injury. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019).

Although California identifies a regulatory burden from potentially tens of thousands of new applications, [Steradian Decl., Doc. No. 18-3 ¶ 3], the constitutional infringement pushes the balance of equities in Plaintiffs' favor. *See Baird*, 81 F.4th at 1044 (a plaintiff who can show a statute violates the Constitution will also usually show that both public interest and balance of equities favor an injunction). Finally, the public benefits from the expanded access—through appropriate state oversight—to a fundamental right. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (explaining that "it is always in the public interest to prevent the violation of a party's constitutional rights").

Plaintiffs are entitled to injunctive relief.

**IV.   PRIVILEGES AND IMMUNITIES CLAUSE**

Plaintiffs also seek a declaratory judgment as to whether California's enforcement of a nonresident ban violates the Privileges and Immunities Clause. U.S. Const., Art. IV, § 2, cl. 1. There is continuing debate on the scope of the Privileges and Immunities Clause. *See generally* William Baude, et al., *General Law and the Fourteenth Amendment*, 76 Stan. L. Rev. 1185, 1205–06 (2024). Some courts have concluded that the Privileges and

Immunities Clause has been cabined by precedent to economic rights. *See, e.g., Culp v. Raoul*, 921 F.3d 646, 657 (7th Cir. 2019).

Declaratory relief based on the Privileges and Immunities Clause would neither afford Plaintiffs additional remedies nor serve to clarify the contours of this constitutional provision. As such, the Court declines to rule on the requested relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (decision to grant declaratory relief is discretionary).

## V.   CONCLUSION

For the above reasons, the Court grants Plaintiffs' motion for summary judgment as to their facial challenge pursuant to the Second/Fourteenth Amendment and denies the request for relief pursuant to the Privileges and Immunities Clause. The parties are **ORDERED** to meet and confer and submit a proposed order for an injunction consistent with this order within 30 days.

It is **SO ORDERED**.

Dated July 1, 2025

Hon. Cathy Ann Bencivengo
United States District Judge